UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ADAM ELLIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01126-SLD-TSH |
| | ) | |
| SUPERIOR POOL PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

ORDER

Before the Court are Plaintiff Elliott's motion for summary judgment, ECF No. 43, and Defendant Superior Pool Product, LLC's ("SPP") motion for summary judgment, ECF No. 44. Also before the Court are SPP's motion to strike certain exhibits filed in support of Elliott's motion for summary judgment, ECF No. 45, and Elliott's motion to strike both SPP's motion for summary judgment and its response to his own motion for summary judgment, ECF No. 49. For the following reasons, SPP's motion for summary judgment is GRANTED, Elliott's DENIED, and his case is DISMISSED. The other motions are MOOT.

**BACKGROUND[1]**

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The facts related here are taken from SPP's undisputed material facts, Def.'s Mot. Summ. J. 5–17, from Elliott's disputed material facts, Pl.'s Resp. Mot. Summ. J. 2–5, ECF No. 48; and from the exhibits to the parties' motions. Elliott did not support his motion for summary judgment with listed and supported facts as required by Central District of Illinois Local Rule 7.1(D)(1)(b), opting instead for a sort of running narrative that occasionally refers to attached exhibits. Accordingly, the Court has relied, in considering Elliott's filings, only on the exhibits attached to both motions, whose authenticity neither party disputes. Because, as explained herein, the Court grants Defendant's motion for summary judgment in its entirety, the facts as related here will be construed in the light most favorable to Elliott. Factual disputes are resolved in his favor, where the dispute is indeed a genuine dispute over a material fact supported by record evidence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)).

Elliott was hired as a "warehouse associate" at SPP's Morton, Illinois location on March 29, 2011. His initial rate of pay was $10 an hour, with overtime eligibility. Edward Eschbach, who was the manager of the Morton branch, made the decision to hire Elliott. On June 16, 2011, Elliott received a pay raise to $12 an hour, and on September 12, 2011, he was promoted to a warehouse manager position. This salaried job involved supervising the warehouse crew, ensuring material was properly placed for orders, and the overall organization of the warehouse. As manager, Elliott had some freedom to implement his own plans and make decisions. Elliott Dep. 49:1–11, Def.'s Mot. Summ. J. Ex. A, ECF No. 44-1.

On December 5, 2011, Elliott was promoted from warehouse manager to operations manager, and received another pay raise. The new job included all of the same responsibilities as the warehouse manager job, and in addition, required Elliott to be in charge of "safety, hazmat and numerous other duties." *Id.* at 59:11–12. He had the ability to make independent decisions, and supervised the same warehouse crew as before. However, on January 23, 2012, Elliott was demoted back to warehouse manager. Eschbach stated that "Elliott was not ready for his new role as Operations Manager and required further training." Eschbach Decl. ¶ 7, Def.'s Mot. Summ. J. Ex. B, ECF No. 47-17. Elliott maintains that he was doing a "stellar" job, Elliott Dep. 65:19, and that he was told by Eschbach that the move was temporary, although he allows that he was asked to "learn new things and stuff" about the job, *id.* at 66:2–3. Eschbach told Elliott that he would return to the operations manager position once the person promoted to fill it, Brian Devaney, had left to another branch of SPP. *Id.* at 117:2–19. Despite the demotion, Elliott's job responsibilities remained much the same. *Id.* at 61:19–63:10. His pay remained the same.

On Elliott's recommendation, SPP hired Michael Cady on April 4, 2012, as a seasonal "warehouse associate." Cady was fired on June 29, 2012, after an argument with Eschbach. Cady later filed an EEOC charge alleging discrimination by SPP on the basis of disability. Cady had sent some text messages to Eschbach during the course of his termination; after he was fired, Eschbach told Elliott, who had not been present, about the firing and spoke with Elliott about the text messages. Eschbach asked Elliott whether he agreed with the messages, and specifically with their allegations that he was a poor manager, and that he unfairly favored his relatives at work. Elliott Dep. 155:14–20. He also told Elliott that "words were exchanged," *id.* at 98:18, and that Cady had not been a "team player," *id.* at 100:2–7. Cady filed a lawsuit regarding the termination on November 13, 2013, before this Court. *See Cady v. Superior Pool Products*, 1:13-cv-01533-SLD-TSH (C.D. Ill. 2016).[2] At some point, Eschbach discussed Cady's lawsuit with Elliott. During these conversations, Cady "just kind of brushed [the lawsuit] off," because he did not want to appear to favor Cady, and worried about retribution from SPP. Elliott Dep. 176:5. When Eschbach asked Elliott if he was going to testify in Cady's case, he said that he was not sure. *Id.* at 176:20–21. At another point, Eschbach told Elliott that if he ran into Cady in a dark alley, he wasn't sure what he (Eschbach) would do to him (Cady). *Id.* at 177:1–3. For his part, while Elliott remained friendly with Cady, he did not testify in Cady's case, and his involvement with Cady's case was limited to "help[ing] him with office supplies for his legal work, if he needed ink or whatnot. If I had extra cash I would give it to him. I helped him with legal research if he needed me to look something up or use my computer." *Id.* at 132:16–22.

At some point in December 2012, SPP changed Elliott from a salaried to a wage employee, in such a way that his pay would amount to a similar yearly number (from $31,000 a

---

[2] The case was ultimately dismissed on a motion for summary judgment.

3

year to $14.91 an hour).[3]  SPP made the change on the basis of an internal audit that raised a question about whether Elliott's position should be exempt from overtime pay under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA").[4]  *See* Tara Nichols Email Aug. 5, 2015, Def.'s Mot. Summ. J. Ex. C-18, ECF No. 44-18.  On March 27, 2013, Elliott received another pay raise, to $15.28 an hour.  On September 19, 2013, Elliott received and signed a "performance Improvement Plan," which noted that Elliott had "not been performing [his] assigned work in accordance with what is expected of a warehouse manager."  Performance Plan 1, Def.'s Mot. Summ. J. Ex. A-1, ECF No. 44-2.  On October 4, 2013, Eschbach noted that Elliott had "shown great improvement in all areas," and that he was now satisfied with Elliott's performance.  Elliott received another pay raise, to $15.58 an hour, on March 20, 2014.

On May 19, 2014, Devaney, transferred to another SPP branch in Indiana.  In Elliott's view, the position Devaney had vacated now ought to be his.  However, as Elliott learned during the week of May 12, 2014, SPP had decided to promote another employee, Ethan Smith, to the operations manager job.  The decision to replace Devaney with Smith was made by the regional manager, Chris Deutsch.  Smith took the position on May 22, 2014.  Smith was a graduate of Purdue University, had participated in a program SPP ran called the "manager in training" program, and had prior sales experience.  Elliott had not participated in the program, and had work experience limited to forklift operations, being a material handler in a paint line department, being a yard man in a lumber business, and working in another warehouse.[5]  Elliott has a G.E.D. that he obtained in 1998.

---

[3] Elliott disputes this fact, but is contradicted by his own deposition testimony.  Elliott Dep. 68:12–13.
[4] Elliott disputes this fact, but without pointing to evidence that contradicts SPP's evidence.
[5] Elliott disputes this summary of his achievements as being incomplete, without stating what it omits.  Pl.'s Resp. Mot. Summ. J. 4–5.

On May 17, 2014, Elliott injured his elbow lifting a pool; on May 19, he hurt his knee, and on May 21, he hurt his back. On May 22, 2014, Elliott reported the back injury to Eschbach, and took a workers' compensation leave of absence. As it turned out, Elliott never returned to work. Elliott suffered from some type of back injury that prevented him from working, and for which he needed surgery that he has not yet received. Elliott Dep. 85:20–86:13, 221:12–23. On May 30, 2014, Elliott hired an attorney and filed claims with the Illinois Workers' Compensation Commission alleging that he had suffered work-related injuries on June 14, 2012, May 17, 2014, May 19, 2014, and May 21, 2014.

On September 11, 2014, Elliott filled out a U.S. Equal Employment Opportunity Commission ("EEOC") intake questionnaire. Intake Questionnaire, Def.'s Mot. Summ. J. Ex. A-8, ECF No. 44-11. This form indicates that Elliott has been denied a desired position, states that he hurt himself repeatedly on the job because SPP was understaffed, and alleges that Elliott has been harassed at work "due to a long time friend whom I referred for employment at our branch." *Id.* at 5. On October 9, 2014, Elliott filed an EEOC charge of discrimination. Def.'s Mot. Summ. J. Ex. A-9, ECF No. 44-12. The charge states that Elliott was "disciplined, harassed, denied a promotion . . . and given a heavy workload," and claims that SPP has violated Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17.

On September 16, 2014, Elliott sent a rambling eleven-page letter to Manny Perez, the CEO of SPP. *See* Elliott Letter Sept. 16, 2014, Def.'s Mot. Summ. J. Ex. A-11, ECF No. 44-14. The letter is lengthily concerned with unfair favoritism shown at work to Eschbach's relatives. Of relevance to Elliott's claims as they appear to stand now are Elliott's allegation that he was treated "completely different after Michael Cady's termination," *id.* at 8; his claim that he was often asked after Cady was fired whether he had spoken with Cady (to which he replied no), *id.*

5

at 7; and his claim that he injured his elbow working on Saturday, May 17, 2014, and suffered two more injuries "that week," *id.* at 9–10. The letter's climax arrives when Elliott is confronted with Smith, the new, usurping operations manager, on May 22, 2014. Smith's hiring "meant that I would not be receiving my promised position that I had trained for, for so long." *Id.* at 11. The letter never states that Elliott has been denied leave for injury, or treated unfairly because of an injury. It closes with Elliott's prediction that, when he eventually returns to work, he will be fired "due to my involvement with Michael Cady's lawsuit against [SPP]." *Id.*

At some point in the fall of 2014, Elliott reported SPP to the Occupational Safety and Health Administration ("OSHA"), citing dangerous work conditions at SPP's Morton branch. In winter 2014, he reported it to the Illinois Department of Labor ("IDOL"), alleging violation of the Illinois Wage and Payment Collection Act. He also filed a complaint with IDOL alleging violations of the Personnel Records Review Act. (The IDOL later concluded its investigation without any finding of wrongdoing. *See* Notice of Conclusion, Def.'s Mot. Summ. J. Ex. A-13, ECF No. 44-16.)

On March 26, 2015, the EEOC declined to investigate further and issued Elliott a right-to-sue letter. Compl., ECF No. 1. Elliott filed the instant lawsuit on March 27, 2015, alleging violations of (I) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; (II) the Illinois Whistleblower Act, 740 ILCS 174/1–174/40; (III) the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1–115/16; (IV) the Personnel Record Review Act ("PRRA"), 820 ILCS 40/0.01–40/13; and (V) the Slander and Libel Act, 740 ILCS 145/0.01– 145/3. Compl. 2. As a factual basis, Elliott alleged that SPP had failed to promote him, failed to stop harassment, retaliated against him, threatened and intimidated him, and slandered him. On

August 25, 2015, Elliott amended his original complaint to include breach of an oral contract. Am. Compl. 3, ECF No. 15.

## DISCUSSION

### I. Legal Standard on a Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). "However, neither 'the mere existence of some alleged factual dispute between the parties,' nor the existence of 'some metaphysical doubt as to the material facts,' is sufficient to defeat a [properly supported] motion for summary judgment." *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1121 (7th Cir. 1998) (quoting *Anderson*, 477 U.S. at 247, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (citations omitted). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir.1999) (quoting *Roger v. Yellow Freight Sys.*, Inc., 21 F.3d 146, 149 (7th Cir. 1994)).

### II. Analysis

Defendant argues that Elliott's ADA retaliation claim fails because Elliott was never engaged in a statutorily protected activity, Pl.'s Mot. Summ. J. 18–25; his ADA failure to promote claim fails because he cannot make out a prima facie case, *id.* at 26–27; his libel and slander claim fails because all of SPP's contested statements were made during the course of legal proceedings, *id.* at 27–28; his whistleblower claim fails because he cannot show retaliation for a protected activity, *id.* at 28–29; that his IWPCA claim must fail because he cannot show he was due the compensation he claims, *id.* at 30; that he cannot show that SPP breached an oral contract with him, *id.* at 35–37; and that his Personnel Records Review claim is moot, *id.* at 37–38. Elliott responds by requesting the Court to consider his own motion for summary judgment. Pl.'s Resp. Mot. Summ. J. 8.

Elliott's motion for summary judgment is generally unresponsive to SPP's motion, and devotes itself to repeating at greater length the allegations from Elliott's complaints. Because, as the Court explains below, SPP shows in its motion for summary judgment that it is entitled to judgment on each of Elliott's claims, the Court will not wade more deeply into Elliott's motion.

## I. ADA Claims

### a. Discrimination

> The ADA both proscribes adverse employment treatment of an employee on the basis of the employee's physical or mental disability, 42 U.S.C. §§ 12112(b)(1)-(4), and imposes an affirmative duty on employers to make reasonable accommodations for the disabilities of an employee who can perform the essential functions of her job with or without accommodation. 42 U.S.C. §§ 12112(b)(5)-(7).

*Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 789 (7th Cir. 1999). To make out a claim of discrimination, a plaintiff must show that he is or was a qualified individual with a disability at or before the time of the alleged discrimination or retaliation. *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001) (explaining that discrimination claims under the ADA must

begin by making this showing). Under the ADA, a qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In turn, "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(1). To make out a discrimination claim, a plaintiff must also be able to point to an adverse employment action, which means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

At summary judgment on an ADA claim, it is a plaintiff's burden to "come forward with evidence that indicates she could meet her ultimate burden of showing an ADA recognized disability." *DePaoli v. Abbott Labs.*, 140 F.3d 668, 672 (7th Cir. 1998). Although the inquiry is an individualized one, this generally means that a plaintiff must be able to point to evidence of some specific physical or mental impairment, and show that it limits or limited a major life activity. *Id.* Here, Elliott claims that he was "denied help when [he] asked for it, during dangerous working conditions." Am. Compl. 4. And he alleges that he suffered a back injury on the job on or around May 21, 2014, that caused him to leave work and never come back, as well as an injury to his elbow on May 17, 2014, and a series of injuries about which he says little, at least in June of 2012 and possibly on other occasions, but which do not appear to have prevented him from working. Elliott Dep. 220:11–19. The back injury that caused Elliott to leave work and never come back appears to have prevented him from working, a "major life activity" under the ADA, and hence likely qualifies as a disability under the ADA. *Cf. Weiler v. Household Fin.*

9

*Corp.*, 101 F.3d 519, 524–25 (7th Cir. 1996) (holding major life activity of working not limited for ADA purposes merely because plaintiff could not work under a certain supervisor). But all of SPP's conduct of which Elliott complains—chiefly, its failure to re-promote him to the coveted position of operations manager—happened before Elliott left permanently as a result of the back injury. Elliott puts forward no evidence showing that the other injuries to which he refers impaired his major life activities, as he must to carry his burden at summary judgment of showing that he is a qualified individual with a disability.

Simply put, the ADA does not penalize employers for the "dangerous working conditions" of which Elliott complains, and Elliott cannot show that he had a disability until after he stopped working at SPP. To the extent that he alleges any of SPP's actions after May 21, 2014 were discriminatory, those claims fail as well, because the ADA only covers adverse *employment* actions, which are changes in employment status, and does not expose employers to liability for defending themselves against legal or administrative claims. *See Ellerth*, 524 U.S. at 761.

### b. Retaliation

For an ADA retaliation claim to survive summary judgment, a plaintiff must show that a reasonable jury could find "1) that he engaged in a statutorily protected activity; 2) that he suffered an adverse employment action; and 3) that there was a causal link between the protected activity and the employer's action." *Prince v. Illinois Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010). Engaging in a protected activity means "oppos[ing] any act or practice made unlawful by [the ADA] or [making] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a).

Elliott's retaliation claim fails because he cannot show that he engaged in a statutorily protected activity.

There is no evidence that Elliott opposed an act or practice unlawful under the ADA. His own lawsuit under the ADA came after he stopped working at SPP. And Elliott's tangential involvement at work in the progress of Cady's ADA claim was minimal. The evidence shows only that Eschbach asked Elliott whether he agreed with the allegations Cady had made in text messages, that Elliott was equivocal about whether he would testify in Cady's ADA case, and that Elliott "just kind of brushed [the lawsuit] off" when asked about it. Elliott Dep. 176:5. This does not rise to the level of opposing a practice prohibited by the ADA. While Elliott may have believed that these activities constituted opposition to illegal practices, only an employee's *reasonable* belief that he is opposing unlawful discrimination causes an action to qualify as opposition for purposes of the ADA's protections. *See Talanda v. KFC Nat. Mgmt. Co.*, 140 F.3d 1090, 1096 (7th Cir. 1998) ("It is a well-established principle that, to receive protection under the ADA, a plaintiff must have acted 'in good faith and *with a reasonable and sincere belief that he or she is opposing unlawful discrimination.*'" (quoting *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1459 (7th Cir. 1995)). A reasonable employee would not have believed that Elliott's behavior amounted to an opposition of unlawful discrimination. Nor would a reasonable employee have believed that Elliott's apparently secret provision of money, ink, and legal research to Cady constituted "opposition" of unlawful discrimination. Even if the latter were opposition, the fact that no one at SPP knew about it prevents Elliott from showing a causal link.[6]

---

[6] Elliott states frequently in his filings that he believes he was retaliated against because of his "friendship" with Cady. *See, e.g.*, Pl.'s Mot. Summ. J. 4–5. Friendship is neither participation in an ADA investigation, proceeding, or hearing, nor is it opposition to an illegal practice.

So too, the evidence does not show that Elliott participated in an investigation, proceeding, or hearing under the ADA. Elliott did not testify or participate formally in any part of Cady's case. Whatever his involvement in conversations with Eschbach and others at SPP about Cady's case, it does not count as involvement in an investigation, proceeding, or hearing under the ADA. *See Hatmaker v. Memorial Med. Ctr.*, 619 F.3d 741, 746–47 (7th Cir. 2010) (holding that participation in purely internal investigations does not qualify for protection from retaliation under Title VII); *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) ("[T]he anti-retaliation provision of the ADA . . . uses similar language to that in Title VII . . . thus, courts look to Title VII retaliation cases for guidance in deciding retaliation cases under the ADA.") (citations omitted); *see also Wimbley v. Doyon Sec. Servs., LLC*, No. 14-CIV-20935, 2014 WL 4376148, at *8 (S.D. Fla. Sept. 4, 2014) ("Simply appearing on a potential witness list regarding an employment discrimination complaint and being willing to tell the truth, if asked to, however laudable, is conduct insufficient to constitute opposition protected by Title VII." (quotation marks omitted)). Elliott appeared (equivocally) willing to testify in Cady's case, and never did. That is all.

Elliott cannot carry his burden to show that he engaged in a statutorily protected activity under the ADA; thus, his ADA retaliation claim fails.

## II.     Illinois Whistleblower Act

Under the Illinois Whistleblower Act, "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). The Whistleblower Act codifies the Illinois common law tort of retaliatory discharge. *See Riedlinger v. Hudson Respiratory Care*,

*Inc.*, 478 F. Supp. 2d 1051, 1054 (N.D. Ill. 2007); *Sutherland v. Norfolk S. Ry.*, 826 N.E.2d 1021, 1026 n.4 (Ill. App. Ct. 2005). An individual qualifies as a whistleblower only if he reports an allegedly unlawful activity to a governmental authority or agency. *Smith v. Madison Mut. Ins. Co.*, No. 05CV00142DRH, 2005 WL 1460301, at *1 (S.D. Ill. Jun. 21, 2005).

Here, as SPP observes, Elliott's claims fail because Elliott left work for the last time before he filed his many complaints with different government agencies. Elliott left work on May 22, 2014, never to return. He filled out his EEOC intake questionnaire on September 11, 2014, reported SPP to OSHA in fall of 2014, and made his IDOL claims in winter of 2014. SPP cannot have retaliated against Elliott for these purported acts of whistleblowing because, as explained above, the whistle was blown only after any possible adverse employment action had occurred. Merely responding to Elliott's phalanx of claims, of course, does not constitute retaliation.

### III. Illinois Wage Payment and Collection Act

Elliott alleges that he ought to have been eligible for and paid overtime for the period that he was a salaried employee. Am. Compl. 4. The IWPCA "does not provide an independent right to payment of wages and benefits; instead it only enforces the terms of an existing contract or agreement." *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 658 (N.D. Ill. 2012). But Elliott acknowledges that he had no written contract with SPP. Elliott Dep. 40:18–22. He does not allege that he was promised the opportunity to earn overtime pay when he was a salaried employee (indeed, he argues that he had an oral contract to the effect that he should have been re-promoted to the salaried position of warehouse manager, Am. Compl. 13). "[P]laintiffs suing under the IWPCA must allege that compensation is due to them under an employment 'contract or agreement,'" *Enger v. Chicago Carriage Cab Co.*, 77 F. Supp. 3d 712, 716 (N.D. Ill. 2014),

*aff'd*, 812 F.3d 565 (7th Cir. 2016) (quoting *Landers–Scelfo v. Corporate Office Sys., Inc.*, 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2005)), and Elliott neither alleges it nor, as he must at this phase of the litigation, offers evidence sufficient for a jury to conclude that such a contract existed. His IWCPA claim fails.

Defendant also spends a considerable amount of time, Def.'s Mot. Summ. J. 31–35, arguing that Elliott's position, while he was salaried, fell into the "executive exemption" of FLSA, and was thus not required to be overtime-eligible. While SPP's diligence is commendable, Elliott did not bring a FLSA claim. Even if he had, the claim would likely fail, because the warehouse manager and operations manager jobs likely fall within the executive exemption to FLSA's requirement that employees be overtime-eligible. *See* 29 C.F.R. § 541.100 (defining "employee employed in a bona fide executive capacity" as being a salaried employee paid not less than $455 a week, whose primary duty is management, who regularly directs at least two other employees, and whose suggestions about hiring and firing other employees are accorded particular weight). The Court does not reach the issue, however.

IV.     **Illinois Personnel Record Review Act**

Cady alleges that SPP violated the PRRA by not providing him with his complete personnel file when he requested in on December 9, 2014. Am. Compl. 4. The PRRA permits employees to review their personnel records, 820 ILCS 40/2, and provides that that "[i]f an employer violates this Act, an employee may commence an action in the circuit court to enforce the provisions of this Act, including actions to compel compliance, where efforts to resolve the employee's complaint concerning such violation . . . have failed," *id.* 40/12(c). The IDOL conducted an investigation of Elliott's claims that, despite SPP's production of a number of documents, his "employee reviews for years 2012, 2013, and 2014" were missing, as were his

"Forklift and HazMat certifications." Notice of Conclusion. The IDOL held a hearing, and on the basis of SPP's representations that it had turned over everything it had on Elliott, determined to conduct no further investigation, while giving Elliott leave to pursue his remaining remedies under 820 ILCS 40/12. At summary judgment, Elliott makes no other or greater showing than he made before the IDOL—indeed, he makes less. There is no evidence suggesting that SPP is withholding any personnel files. Elliott's claim fails.

### V.     Slander and Libel

Elliott alleges that statements SPP made to the arbitrator in a related worker's compensation case were lies, and thus constituted slander and libel. Am. Compl. 4. Quite aside from the fact that this is summary judgment, and Elliott is unspecific about what statements were made, and how they were slanderous or libelous, as SPP observes, "[a]bsolute privilege in defamation actions protects anything said or written in a legal proceeding, so long as it is pertinent and material to the matter in controversy." *Weiler v. Stern*, 384 N.E.2d 762, 763 (Ill. App. Ct. 1978). SPP's unspecifically alleged statements appear, even were they alleged and shown with the requisite specificity, not to be slander or libel. Elliott's claim fails.

### VI.    Breach of Oral Contract

Elliott argues that SPP broke an oral contract to re-promote him to the operations manager position. Am. Compl. 13. Elliott claims that when he was demoted to warehouse manager in January 2012, Eschbach promised him that Devaney would quickly be shuffled out of the position, and Elliott re-promoted by August 2012. Elliott Dep. 117:1–119:18.

"In Illinois oral contracts for employment are viewed more skeptically than written contracts, and the analysis of such contracts is 'more scrutinizing.'" *Milazzo v. O'Connell*, 925 F. Supp. 1331, 1340 (N.D. Ill. 1996), *aff'd*, 108 F.3d 129 (7th Cir. 1997) (quoting *Maher v. Con–*

*Way Intermodal, Inc.*, No. 92 C 2863, 1993 WL 243319, at *6 (N.D. Ill. June 30, 1993)) (citation omitted). "In order for an employee to show that his employer made a binding oral contract for permanent employment, the employee is required to prove that the employer made clear and definite oral promises as to the terms and duration of the employment, and that there was sufficient consideration for the promise." *Maher*, 1993 WL 243319, at *6. Consideration in this setting means "some sacrifice . . . that [the employee] probably would not have made absent a guarantee of continued permanent employment." *Smith v. Bd. of Educ. of Urbana Sch. Dist. No. 116 of Champaign Cty., Ill.*, 708 F.2d 258, 263 (7th Cir. 1983).

Here, Elliott has not overcome Illinois's presumption in favor of "at-will" employment. *See Maher*, 1993 WL 243319 at *6. He simply says that he was promised the promotion by a certain time; the promised employment had no durational term. *See Krieger v. Adler, Kaplan, & Begy*, No. 94 C 7809, 1996 WL 6540, at * 6 (N.D. Ill. Jan. 5, 1996) ("First, the plaintiff must show that the employer made 'clear and definite' oral promises concerning the terms and duration of his employment."). He also fails to allege consideration of any kind on his part. Under Illinois law, mere waiving of a right not to pursue employment somewhere else is insufficient to show consideration, *Milazzo*, 925 F.Supp. at 1341, but Elliott does not even show that. *Cf. Shelton v. Ernst & Young, LLP*, 143 F. Supp. 2d 982, 992–93 (N.D. Ill. 2001) (dismissing with prejudice a claim for breach of oral contract where there was no specificity as to the term of a promised promotion, and plaintiff alleged in a general way that he forewent other job opportunities). Elliott's claim for breach of oral contract fails because the purported contract was not of sufficient specificity, and no consideration was provided.

**CONCLUSION**

Accordingly, Plaintiff's motion for summary judgment, ECF No. 43, is DENIED, and Defendant's motion for summary judgment, ECF No. 44, is GRANTED. Defendant's motion to strike, ECF No. 45; and Plaintiff's motion to strike Defendant's motions, ECF No. 49, are MOOT. The case is DISMISSED WITH PREJUDICE. No further claims remaining, the Clerk is directed to enter judgment and close the case.

Entered this 30th day of March, 2017.

s/ Sara Darrow  
SARA DARROW  
UNITED STATES DISTRICT JUDGE